● ORIGINAL ●

FILED
HARRISBURG
JUL 16 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

MCC:KLM:slg:2001V00601

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN BUCKSON,<br>     Petitioner<br><br>     v.<br><br>U.S. PAROLE COMMISSION, et al.,<br>     Respondents | Civil No. 1:CV-01-0935<br>(Judge Rambo) |

### RESPONSE TO HABEAS CORPUS PETITION

This is a habeas corpus petition brought by Steven Buckson against the United States Parole Commission ("Commission") and Warden Don Romine of the United States Penitentiary, Lewisburg, Pennsylvania. Buckson alleges that the Commission violated the <u>ex post facto</u> clause when it applied the applied federal parole guidelines to him, rather than District of Columbia parole guidelines. Buckson claims that he is entitled to rehearing every twenty-four months.

Buckson filed his habeas petition on May 29, 2001. This Court directed service of the petition on June 26, 2001. As explained below, the habeas petition should be denied as the Commission did not violate the <u>ex post facto</u> clause in applying federal parole guidelines to Buckson.

## I. Statement of the Case

The petitioner, Stephen Buckson, was sentenced by the District of Columbia Superior Court on June 8, 1989 to 15 years to life for kidnapping. (R. 1.)[1] A copy of Buckson's presentence report, describing the circumstances of the offense, is submitted at R. 5 to 14.[2] Buckson was subsequently transferred to the jurisdiction of the Commission pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-1231. This statute abolished the D.C. Board of Parole and transferred jurisdiction to make parole decisions for all D.C. Code offenders to the Commission.

Buckson became eligible for parole on November 28, 1998. (R. 2.) In accordance with regulations, Buckson received an initial parole determination hearing from the Commission on September 21, 1998. (R. 15-18.) The Commission applied the amended and supplemented D.C. parole regulations, which are codified at 28 C.F.R. §2.70 et seq. Under these rules, Buckson's point score was 6, indicating that parole should be denied at the

---

[1] "R." refers to Respondent's Record in Support Its Response to Response to Habeas Corpus Petition.

[2] Respondent has removed page two of the presentence report which only listed the three social security numbers used by Buckson.

2

initial hearing. 28 C.F.R. §2.80(h). The rehearing guidelines were 18-24 months. Id.

The Commission denied parole and ordered a rehearing in November 2003, 60 months from Buckson's parole eligibility date. (R. 19-20.) The Commission provided the following statement of reasons for departure from the rehearing guidelines:

> After consideration of all factors and information presented, a departure from the rehearing guidelines at this consideration is warranted for the following reasons. You are a more serious risk than indicated by your Salient Factor Score in that your crime involved extreme cruelty in that not only was the victim raped, but she was assaulted to the point that her jaw was broken and some [of her] teeth were broken.

(R. 19.) The regulation authorizes the Commission to "schedule a reconsideration hearing at a time different from that indicated in paragraph (j) of this section" when "unusual circumstances" are present. The Commission must specify what specific factors it relies upon in departing from the rehearing guideline range. 28 C.F.R. §2.80(m).

## II. Question Presented

Should Buckson's habeas petition be denied because the United States Parole Commission has not violated ex post facto clause by not providing a hearing at the time set by the D.C. Board of Parole?

Suggested answer in the affirmative.

3

III. <u>Argument</u>

**BUCKSON'S HABEAS PETITION SHOULD BE DENIED BECAUSE THE UNITED STATES PAROLE COMMISSION HAS NOT VIOLATED THE <u>EX POST FACTO</u> CLAUSE BY NOT PROVIDING A HEARING AT THE TIME SET BY THE D.C. BOARD OF PAROLE.**

Preliminarily, Buckson is correct that he comes under the jurisdiction of the United States Parole Commission ("Commission") pursuant to the Revitalization Act because his initial parole hearing was conducted after August 5, 1998. This Act gives the Commission jurisdiction over all felony prisoners who are eligible for parole under the D.C. Code effective August 5, 1998.

The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. <u>See</u> D.C. Code §24-1231(a). The Commission's amended version of the parole rules and guidelines of the D.C. Board of Parole was published at 63 Federal Register 39172 (July 21, 1998) and is codified at 28 C.F.R. §2.80 <u>et seq.</u>. It is the Commission's position that its revised version of the "grid score" guideline system of the D.C. Board of Parole at 28 C.F.R. §2.80 does not impose an <u>ex post facto</u> punishment on prisoners like Buckson.

4

A.  **The Revitalization Act Changes Nothing With Regard To Buckson's Right to Parole Consideration**

The Revitalization Act is not an <u>ex post facto</u> law because it does not in any respect change Buckson's "quantum of punishment." Although the act transfers jurisdiction to the Commission, every D.C. prisoner prior to the Revitalization Act could fall under the Commission's jurisdiction at any time during service of his term. See <u>Morgan v. District of Columbia</u>, 618 F. Supp. 754 (D.D.C. 1985). Under D.C. Code §24-209, any D.C. Code prisoner who was housed in the federal system was brought before the Commission. See <u>Story v. Rives</u>, 97 F.2d 182, 184 (D.C. Cir.), <u>cert</u>. <u>denied</u>, 305 U.S. 595 (1938); <u>Cosgrove v. Smith</u>, 697 F.2d 1125, 1128-1132 (D.C. Cir. 1983). Therefore, because Buckson could have come under the Commission's jurisdiction prior to the Revitalization Act, the Act is not <u>ex post facto</u> with respect to the Commission's jurisdiction over Buckson.

Moreover, prior to the Revitalization Act, the D.C. Board possessed the authority to "amend and supplement" its guidelines and to apply them retroactively. Under the Revitalization Act, this authority likewise has been granted to the Commission. Thus, the revisions ordered by the Commission under the Revitalization Act were only an exercise of authority already possessed by the Board and transferred. See <u>Davis v. Henderson</u>, 652 A.2d 634, 636 (D.C. 1995). The question of which agency exercises that authority is clearly a matter of procedure not covered by the <u>ex post facto</u>

5

clause. See Dobbert v. Florida, 432 U.S. 282, 293, (1977). Therefore, the Revitalization Act does not add any new provisions that increase Buckson's "quantum of punishment" with respect to the guidelines.

### B. Parole Commission Guidelines Do Not Constitute Laws For Purposes of the Ex Post Facto Clause.

Even without reference to the Revitalization Act, the Commission's revised version of the D.C. parole guidelines did not increase Buckson's punishment in violation of the ex post facto clause because parole guidelines do not constitute laws for ex post facto purposes. Parole guidelines are internal guideposts for the exercise of agency discretion which merely articulate the policy norms of the decision makers themselves, as opposed to prescriptive laws that impose restrictions on agency authority. See, e.g., Sheary v. U.S. Parole Commission, 822 F.2d 556, 558 (5th Cir. 1987) (rejecting ex post facto challenge to application of Commission's guidelines for federal prisoners, noting that it is "most dubious" that parole guidelines are to be viewed as laws); Wallace v. Christensen, 802 F.2d 1539, 1553-54 (9th Cir. 1986) (en banc) (rejecting ex post facto challenge to Commission's guidelines for federal prisoners, noting that the guidelines would not constitute a law even if, as petitioner alleged, the Commission followed the guidelines in 85% of its cases); Prater v. U.S. Parole Commission, 802 F.2d 948, 954 (7th Cir. 1986) (en banc) (rejecting ex post facto challenge to Commission's guidelines, and stating that a

6

change in the scope of the agency's discretion in enforcing the law does not activate the prohibition against ex post facto laws); DiNapoli v. Northeast Regional Parole Commission, 764 F.2d 143, 147 (2d Cir.) ("federal parole guidelines...are not `laws' within the meaning of the ex post facto clause..."), cert. denied, 474 U.S. 1020 (1985); Inglese v. U.S. Parole Commission, 768 F.2d 932, 935-36 (7th Cir. 1985) (federal parole guidelines "are not `laws,' and therefore can be applied ex post facto without violating Buckson's constitutional rights."); Dufresne v. Baer, 744 F.2d 1543, 1550 (11th Cir. 1984) (Commission's guidelines are merely policies that show how agency discretion is likely to be exercised and do not constitute laws for ex post facto purposes), cert. denied, 474 U.S. 817 (1985); Ruip v. United States, 555 F.2d 1331, 1335 (6th Cir. 1977) (federal parole guidelines are not laws, but guideposts which assist the Parole Commission in exercising its discretion).

Furthermore, the only United States Court of Appeals that has held that the Commission's parole guidelines could constitute laws for ex post facto purposes if administered without sufficient flexibility, subsequently found that the Commission's guidelines did not constitute laws, even though the Commission followed the applicable guidelines in more than 75% of its cases. See Forman v.

7

McCall, 776 F.2d 1156, 1163 (3rd Cir. 1985), cert. denied, 476 U.S. 1119 (1986).[3]

Thus, the overwhelming weight of authority indicates that the Commission's parole guidelines for D.C. offenders are not "laws" for Ex Post Facto Clause purposes, because they guide the Commission's discretion in the same fashion as the federal parole guidelines.[4]

### C. There Has Been No Change in The Law Governing Buckson's Eligibility for Parole.

The parole law in effect when Buckson committed his crime in 1986 is the same law that was applied to Buckson by the Commission when it conducted his initial hearing. See D.C. Code §24-204(a). Although the authority of the D.C. Board of Parole to grant or deny parole to imprisoned felons has been transferred to the Commission by the Revitalization Act, the Commission is required to exercise its new authority "... pursuant to the parole

---

[3] The D.C. Circuit Court of Appeals recently addressed this issue in Blair-Bey v. Quick, 151 F.3d 1036, 1049 n.12 (D.C. Cir.), modified on rehearing at 159 F.3d 591 (D.C. Cir. 1998), and noted that there was a question whether parole regulations count as laws for purposes of the ex post facto clause. However, the Court declined to decide the issue, which had not been raised by the District of Columbia in the proceeding below. By contrast, respondent is now raising this issue for this Court's determination.

[4] Like the federal guidelines, the function of the D.C. guidelines is to indicate when parole should "ordinarily" be granted or denied, with the option of departing from the guidelines left to the Commission's discretion. See Ellis v. District of Columbia, 84 F.3d 1413, 1419 (D.C. Cir. 1996).

8

laws and regulations of the District of Columbia ..." See D.C. Code §24-1231(c).

Therefore, the Commission exercises its parole authority pursuant to the same parole laws that were in effect when Buckson committed the crimes in this case. Governing D.C. law authorizes the Commission (as it did the Board of Parole) to exercise its discretion, and to adopt policies, with the goal of predicting whether Buckson is a "serious risk." As stated in White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994), D.C. Code § 204(a) "... is phrased in discretionary terms, and leaves it to the Board to determine whether the prisoner is likely to be a responsible citizen if he is returned to the community *and whether release on parole is consistent with the public safety*" (emphasis added).

Accordingly, Buckson cannot establish that a *law* has been passed (or reinterpreted) subsequent to the enactment of his crime that has disadvantaged him by raising any new obstacle to obtaining a parole, that prior law did not already permit.

D. **Even if the Parole Guidelines Do Constitute Laws, Their Application To Buckson Does Not Violate The Ex Post Facto Clause.**

Even if this Court determines that the Commission's parole guidelines do constitute laws for ex post facto purposes, Buckson is still not entitled to relief because he has not, and cannot, establish that these guidelines remove the Commission's

9

discretion or that he has been materially disadvantaged by the use of these guidelines.

The Board's original adoption of parole guidelines in 1987 merely formalized the manner in which the Board previously exercised the discretion conferred upon it by D.C. Code §24-204. See Blair-Bey, supra, 151 F.3d at 1050. Likewise, the Commission's adoption of those same guidelines in 1998 carried forward the manner in which the Board had exercised its discretion into the Commission's own decision-making practice. The Commission has incorporated the relevant D.C. parole regulations into the Code of Federal Regulations without altering the basic framework of the point scoring system described in Ellis v. District of Columbia, supra, and the Commission's revisions have largely focused on harmonizing the Board's guidelines with the Board's actual practice during the past decade. See 28 C.F.R. § 2.80. The Commission has only modified the point score system previously used by the Board in order to include factors frequently cited by the Board as a basis for upward departures from the 1987 guidelines and to provide a better prediction of each prisoner's potential for violent recidivism.

Specifically, the Commission adopted a point scoring system that increased the number of points awarded for certain factors, such as the level of violence in the offense of conviction and the number of violent episodes on the offender's prior record.

10

At the same time the Commission omitted the points previously scored for certain factors found to be less predictive of future violence, such as drug trafficking. See 63 Fed. Reg. at 39172-39173. These modifications only incorporate into the scoring system (and rationalize through statistical research) the various discretionary factors that the Board had already been using to justify its frequent departures from the guidelines. Id. See e.g., McRae v. Hyman, 667 A.2d 1356 (1995) (upholding denial of parole, notwithstanding a favorable point score, to a repeat violent offender). The modifications also reflect the Commission's own experience with the D.C. parole guidelines prior to 1998. See, e.g., Duckett v. U.S. Parole Commission, 795 F. Supp. 133, 137 (M.D. Pa. 1992)(upholding a departure from the D.C. guidelines that was justified by the prisoner's repetitive violent record and "serious risk to the public" based on the fact that the D.C. grid score only deducts 1 point for "violence" on a prisoner's record regardless of its nature or extent). Hence, it cannot be said that a change in actual paroling policy has been instituted by the 1998 revision, let alone a change in the basic guideline system.[5]

Moreover, Buckson cannot show that the 1998 guidelines, including the revised point score system, have "totally or very

---

[5] For example, a total point score of 0-2 still indicates that parole may be granted at the initial hearing, and a total point score of 0-3 still indicates that parole may be granted at a rehearing. Compare: 28 DCMR §204.19 - §204.21 with 28 C.F.R. §2.80(h) - (j).

11

substantially circumscribed" the broad discretion allowed by the 1987 guidelines to grant parole below the guidelines if the Board saw fit to do so. The Commission has the same discretion to grant parole notwithstanding the guidelines that was permitted by the 1987 guidelines. Cf. 28 D.C.M.R. §204.22 (1987) and 28 C.F.R. §2.80(m) (1998).[6]

The negative factors on Buckson's record speak against him with no more legal force for having been incorporated into the grid score, than they did when the prediction of a prisoner's violent potential was left largely to Board discretion. The Board had to weigh all the relevant factors to determine whether release on parole would be "consistent with the public safety." See White

---

[6] 28 DCMR §204.22 provides that:

> The Board may, in unusual circumstances, waive the SFS and the pre- and post-incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

28 C.F.R §2.80(m) provides that:

> The Commission may, in unusual circumstances, waive the Salient Factor Score and the pre- and post-incarceration factors set forth in this section to grant or deny parole to a parole candidate notwithstanding the guidelines, or to schedule a reconsideration hearing at a time different from that indicated in paragraph (j) of this section. Unusual circumstances are case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole. In such cases, the Commission shall specify factors that it relied on in departing from the applicable guideline or guideline range.

v. Hyman, supra. Repetitive crimes of violence and a poor parole prognosis were factors that were a frequent basis for the Board to deny parole. See, e.g. McRae v. Hyman, 667 A.2d 1356 (1995). A prisoner's best hope for a grant of parole still depends, then as now, on his ability to marshal what positive factors he can find to sway discretion in his favor, despite his criminal record and/or unfavorable grid score.

Buckson also has failed to meet his burden of showing that the Commission's use of the guidelines at §2.80 has necessarily worked to his disadvantage by yielding a result "materially harsher" than what the D.C. Board of Parole actually would have ordered in his case under its own parole guidelines. The D.C. guidelines contained a provision functionally identical to §2.80(m), which permitted the Board to depart from the rehearing schedule. That regulation provided that: "Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate." 28 D.C.M.R. §104.11. Indeed, this provision was less generous to Buckson because it did not require, as the Commission's rule does, that the Board identify the "specific factors it relied upon" in departing from the guidelines. Compare §2.80(m) with 28 D.C.M.R. §104.11.

Thus, Buckson's claim that the D.C. Board, using the 1987 guidelines, would have given him more lenient treatment than has been ordered by the Commission, is merely speculative. The Supreme

13

Court has held that where the risk of increased punishment under an amended parole scheme is speculative and attenuated, a valid <u>ex post facto</u> claim does not exist.  See <u>California Dept. of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995). Because the risk of increasing the measure of Buckson's punishment under the Commission's guidelines and discretion is indeed "speculative and attenuated," no valid <u>ex post facto</u> claim exists.

Finally, Buckson is in error to allege a legitimate expectancy of parole created by D.C. law. He has no such interest. See <u>Price v. Barry</u>, 53 F.3d 369 (D.C. Cir. 1995). Parole guidelines are not an <u>ex post facto</u> punishment if a prisoner's only expectancy under the governing parole statute is to be held "at the discretion -- howsoever exercised -- of the parole authorities." See <u>Warren v. U.S. Parole Commission</u>, 659 F.2d 183, 195 (D.C. Cir. 1981). <u>Warren</u> held that the <u>ex post facto</u> *clause did not prohibit the* application of newly-adopted federal parole guidelines to a prisoner whose crime was committed under a federal parole statute that was identical in wording to D.C. Code §24-204. Both statutes authorize changeable paroling policies. That is precisely the situation in which Buckson finds himself, so the 1998 guideline revisions cannot be made the basis for a valid <u>ex post facto</u> claim.

## IV. Conclusion

For the above-stated reasons, Buckson's habeas petition should be denied.

                              MARTIN C. CARLSON
                              United States Attorney

                              *[signature]*

                              KATE L. MERSHIMER
                              Assistant U.S. Attorney
                              SHELLEY L. GRANT
                              Paralegal Specialist
                              228 Walnut Street
                              P.O. Box 11754
                              Harrisburg, PA 17108-1754
                              717-221-4482

Date: July 16, 2001

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN BUCKSON, :
      Petitioner :
:
      v. : Civil No. 1:CV-01-0935
: (Judge Rambo)
U.S. PAROLE COMMISSION, et al., :
      Respondents :

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

    That on July 16, 2001, she served a copy of the attached

**RESPONSE TO HABEAS CORPUS PETITION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Steven Buckson
Reg. No. 00575-007
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

                                            _/s/ Shelley L. Grant_
                                            SHELLEY L. GRANT
                                            Paralegal Specialist