

8/10/01
MA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVEN BUCKSON,** | CIVIL NO. 1:CV-01-0935 |
| Petitioner | |
| v. | |
| U.S. PAROLE COMMISSION, <u>et al.</u>, | (Judge Rambo) |
| Respondents | |

FILED
HARRISBURG, PA
AUG 0 8 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

# MEMORANDUM

## Background

      Steven Buckson, an inmate presently confined at United States Penitentiary at Lewisburg, Pennsylvania, ("USP Lewisburg") initiated the captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Along with his petition, Jones submitted the requisite five dollar filing fee for this action. Named as respondents are the United States Parole Commission ("Commission") and Don Romine, warden of USP Lewisburg.

      Petitioner was sentenced by the Superior Court for the District of Columbia to a term of 15 years to life imprisonment for kidnapping on June 8, 1989. (Doc. 6, Response to Habeas Petition.) Buckson was subsequently transferred to the jurisdiction of the Commission pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-1231. This statute abolished the D.C. Board of Parole and transferred jurisdiction to the Commission to make parole decisions for all D.C. Code offenders.

Buckson became eligible for parole on November 28, 1998. (Id. at 2.) In accordance with regulations, Buckson received an initial parole determination hearing from the Commission on September 21, 1998. The Commission applied the amended and supplemented D.C. parole regulations, which are codified at 28 C.F.R. §2.70 et seq. Buckson received a point score of 6 which indicates that parole should be denied at the initial hearing. 28 C.F.R. §2.80(h). Based on the guidelines, a rehearing should have been set in 18 to 24 months. (Id.)

The Commission followed the guidelines in denying the parole but departed from the guidelines in ordering the rehearing to be set in November 2003, sixty (60) months later. (Id. at 3.) The Commission departed from the guidelines because Buckson's crime involved extreme cruelty. (Id.) The regulation authorizes the Commission to "schedule a reconsideration hearing at a time different from that indicated in paragraph (j) of this section" when "unusual circumstances" are present. The Commission must specify what specific factors it relies upon in departing from the rehearing guideline range. 28 C.F.R. §2.80(m).

Petitioner states that under the old D.C. Parole guidelines § 24-209(A), a petitioner must have a reconsideration hearing every 24 months to determine a release date. (Doc. 1, Attachment to Petition.) Petitioner states he was entitled to a rehearing on May 7, 2001. Petitioner contends his "due-process of law was denied" because the new guidelines "subjected the petitioner to an [sic] harsher parole guideline range and violated the law of ex-post-facto." (Id.) Respondent asserts that the

2

application of the new guidelines do not violate the ex post facto clause. The matter is ripe for consideration. For the reasons that follow, the petition will be denied.

## Discussion

It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. United States v. Addonizio, 442 U.S. 178 (1979); Campbell v. United States Parole Commission, 704 F.2d 106 (3d Cir. 1983). The Commission shall also exercise authority over District of Columbia Code offenders pursuant to Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, P.L. 105-33, and D.C. Code 24-209. See 28 C.F.R. §2.70. Therefore, the Commission has authority over Buckson who is a D.C. offender. The guidelines for D.C. offenders are regulated by 28 C.F.R. §2.80.

Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).[1] Courts have

---

1. In addition to the general holding that the Constitution does not create any liberty interest in parole, the Supreme Court, in cases following Greenholtz, developed a methodology to determine when a liberty interest may be created by a state. See Board of Pardons v. Allen, 482 U.S. 369 (1987); Hewitt v. Helms, 459 U.S. 460 (1983). In Sandin v. Conner, 515 U.S. 472, (1995), the Sandin majority roundly criticized the methodology developed by the Greenholtz, Allen, and Hewitt Court. Ellis, 84 F.3d at 1417. Although it is unclear where the Supreme Court

(continued...)

3

consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996) (hodling that the District's parole statute and regulations do not create any liberty interest in parole).

The function of judicial review of a Commission decision on a petition for writ of habeas corpus is to determine whether the Commission abused its discretion. The Court is not empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. See Butler v. United States Parole Commission, 570 F. Supp. 67, 77 (M.D. Pa.1983).

To prevail on ex post facto challenge to a sentence, the petitioner has to show (1) that the challenged law operated retroactively, that is, that it applied to conduct completed before its enactment, and (2) that the challenged law raised the penalty from whatever the law provided when he acted. Johnson v. United States, 529 U.S. 694 (2000); U.S.C.A. Const. Art. 1, § 9, cl. 3. The purpose for the clause, as articulated by the Supreme Court, is to prohibit "laws that retroactively alter the definition of crimes or

---

(...continued)
stands in regards to methodology, the general principle in Greenholtz was not overruled. Id.

4

increase the punishment for criminal acts." <u>California Dept. of Corrections v. Morales</u>, 115 S. Ct. 1597, 1601 (1995).

Recently, the Supreme Court stated that one function of the <u>ex post facto</u> clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission, and that retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. <u>Garner v. Jones</u>, 529 U.S. 244, 249 (2000). The Court further stated that "whether the retroactive application of a particular change in parole law respects the prohibition on <u>ex post facto</u> legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account." <u>Id.</u>

In <u>Garner</u>, an inmate filed a §1983 civil rights action alleging that scheduling of his parole hearings by State Board of Pardons and Paroles violated the <u>ex post facto</u> clause. The amended rule changed the frequency of required parole reconsideration hearings for inmates serving life sentences from every three years to every eight years. <u>Id.</u> at 246. In its analysis, the Supreme Court stated that the case turned on the operation of the amendment to the rule within the whole context of Georgia's parole system. <u>Id.</u> at 252. The Court stated that Georgia law charges the Parole Board with determining which prisoners "may be released on pardon or parole and [with] fixing the time and conditions thereof." <u>Id.</u> (citing Ga.Code Ann. §42-9-20 (1997)). The Supreme Court found that the "essence of respondent's case, as we see it, is not that discretion has been changed in its exercise but that, in the period between parole reviews, it will not be exercised at all." <u>Id.</u> at

5

254. The Supreme Court held that the inmate must show that as applied to his own sentence the law created a significant risk of increasing his punishment.

In determining whether the inmate in <u>Garner</u> was at risk, the Supreme Court stated that "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." <u>Id.</u> at 256. The Court stated "[t]hat absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligation." <u>Id.</u> The Court found that "[r]ather than being required to review cases *pro forma*, the Board may set reconsideration dates according to the likelihood that a review will result in meaningful considerations as to whether an inmate is suitable for release." <u>Id.</u> at 254. The Board's stated policy was to provide for reconsideration at 8-year intervals "when, in the Board's determination, it is not reasonable to expect that parole would be granted during the intervening years." <u>Id.</u> The Supreme Court found that the policy enabled the Board to put its resources to better use, to ensure that those prisoners who should receive parole come to its attention. <u>Id.</u>

In the instant petition, Buckson has failed to demonstrate that the change in the guidelines created a significant risk of increasing his punishment. The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done.

See D.C. Code §24-1231(a). As the Supreme Court stated in Garner, "[t]he idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions." Id. at 253. Accordingly, the mere fact that the parole guidelines are amended and applied retroactively does not automatically implicate the ex post facto clause.

Furthermore, the Commission's guidelines do not constitute laws for ex post facto purposes. Parole guidelines provide guidance as to the exercise of agency discretion as opposed to prescriptive laws created by legislative branches of government that impose restrictions on agency authority. See, e.g., Sheary v. U.S. Parole Commission, 822 F.2d 556, 558 (5th Cir. 1987) (rejecting ex post facto challenge to application of Commission's guidelines for federal prisoners, noting that it is "most dubious" that parole guidelines are to be viewed as laws); Prater v. U.S. Parole Commission, 802 F.2d 948, 954 (7th Cir. 1986) (en banc) (rejecting ex post facto challenge to Commission's guidelines, and stating that a change in the scope of the agency's discretion in enforcing the law does not activate the prohibition against ex post facto laws.); DiNapoli v. Northeast Regional Parole Commision, 764 F.2d 143, 147 (2d Cir.) ("federal parole guidelines . . . are not 'laws' within the meaning of the ex post facto clause . . . ."), cert. denied, 474 U.S. 1020 (1985). Because the guidelines are not laws, a violation of the ex post facto clause can not exist since that is a basic

requirement to prevail on an ex post facto challenge. Johnson v. United States, 529 U.S. 694 (2000).

Buckson also has failed to meet his burden of showing that the Commission's use of the guidelines at § 2.80 resulted in increasing his punishment. The D.C. guidelines contained a provision functionally identical to §2.80(m), which permitted the Board to depart from the rehearing schedule. That regulation provided that: "Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate." 28 D.C.M.R. §104.11. The D.C. guidelines did not require the Board to specify the factors it relied upon in departing from the guidelines as is required in §2.80(m).

Therefore, Buckson's claim that the old guidelines utilized by the D.C. Board would have given him more lenient treatment than has been ordered by the Commission, is merely speculative. The Supreme Court has held that where the risk of increased punishment under an amended parole scheme is speculative and attenuated, a valid ex post facto claim does not exist. Morales, 514 U.S. at 509. Because the risk of increasing Buckson's punishment under the Commission's guidelines is "speculative and attenuated," no valid ex post facto claim exists. Accordingly, Buckson's petition will be denied. An appropriate order will be issued.

SYLVIA H. RAMBO
United States District Judge

Dated: August 8, 2001.

8

```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA

               * * MAILING CERTIFICATE OF CLERK * *

                       August 8, 2001


   Re:  1:01-cv-00935   Buckson v. U.S. Parole Comm.



   True and correct copies of the attached were mailed by the clerk
   to the following:


        Steven J. Buckson
        USP-LEWISBURG
        #00575-007
        P. O. Box 1000
        Lewisburg, PA  17837

        Kate L. Mershimer, Esq.
        Martin Carlson
        United States Attorney
        228 Walnut Street
        Second Floor
        Harrisburg, PA  17108



cc:
Judge                          (X )            (X ) Pro Se Law Clerk
Magistrate Judge               ( )             ( )  INS
U.S. Marshal                   ( )             ( )  Jury Clerk
Probation                      ( )
U.S. Attorney                  ( )
Atty. for Deft.                ( )
Defendant                      ( )
Warden                         ( )
Bureau of Prisons              ( )
Ct Reporter                    ( )
Ctroom Deputy                  ( )
Orig-Security                  (X )
Federal Public Defender        ( )
Summons Issued                 ( )   with N/C attached to complt. and served by:
                                     U.S. Marshal ( )    Pltf's Attorney ( )
Standard Order 93-5            ( )
Order to Show Cause            ( )   with Petition attached & mailed certified mail
                                     to:  US Atty Gen   ( )   PA Atty Gen   ( )
                                          DA of County  ( )   Respondents   ( )

Bankruptcy Court               ( )
Other_____   ( )
                                              MARY E. D'ANDREA, Clerk
```

DATE: August 8th, 2001                              BY: _____
                                                         Deputy Clerk